All right, we'll go ahead and do the next one. Which is case number 23-50750, Kipp Flores Architects v. AMH Creekside Development at  And we will begin, y'all ready? Okay, we'll begin with Louis Donham for Kipp Flores. Good morning, Your Honor. Please, the court. As every member of this panel knows, the 41A issue, there's a massive circuit split on that. You've got at least six circuits saying that you can, in fact, dismiss claims, if done with prejudice, under 41A2. The 11th Circuit has, of course, gone the other way. To the best of my research, the Fifth Circuit has never had a case involving a 41A2 dismissal with prejudice. There's not been a holding on that. Now, if this court extends the rule in Exxon, which says a voluntary dismissal without prejudice cannot be done under Rule 41, if it extends that to A2, then yes, we have a jurisdictional issue here, because the claims, as the court said in Exxon, as it reiterated in Williams, are still alive in district court. However, I think there's a way out, and it is suggested in footnote 10 of Exxon. And what footnote 10 in Exxon points out is that where the record shows that the conditions for an amendment of pleadings exist, such as a court order or the consent of all the parties, then the court can construe the request to dismiss under 41A as an amendment of pleadings. And the Sixth Circuit, the Eighth Circuit, and the Seventh Circuit have all done this. They've all said, look, if the record shows that it could have been treated as an amendment of pleadings, then we'll just construe it that way. And — I'm sorry to interrupt. I just want to make sure we're talking about the same Exxon. Are you talking about the 1979 Exxon v. Maryland Casualty? Yes, sir. Where we dismissed the appeal?  It was dismissed because it was dismissed. It was saying that it was — pardon me — the court said, because Exxon unilaterally did it, we didn't have jurisdiction, and therefore it had to go back to the district court and had to be fixed. That's the Exxon case I'm referring to. And so help me understand how this helps you. I'm sorry? Help me understand how this helps you. I mean, it's — I read Exxon relatively carefully. I appreciated you providing the citation before argument. But this seems to suggest that we have no jurisdiction. The appeal is dismissed. It says specifically over and over again, right, when Rule 41a refers to the dismissal of an action, there is no reason to suppose that the term is intended to include the separate claims which make up the action. That seems to be what we said in Williams v. Seidenbach and other cases that says Rule 41a is pretty clear. There's a distinction between claims and actions. You can't use it for claims. If you want to deal with claims, that's why you have Rule 15 or whatever else you want to use. But if you do Rule 41 — I'm just not sure I understand why we're talking about  I'm sorry.  Again, I read Exxon as saying what it says in the conclusion, Exxon had no power unilaterally to withdraw the second claim from its complaint. It was talking about an action. If you look at footnote 10, though, the court looks at this issue about whether or not could we look at it as being an amendment of pleadings. It says it can't because Exxon did it unilaterally. You couldn't have done an amendment under 15a2. But again, if the court's ruling is that either Exxon already applies to everything or that we're going to extend it to this, then yes, we have an issue. However, my point, though, is that where you have the conditions which exist in this case to allow an amendment of pleadings, you can just simply construe it rather than have us to go back to the district court and have them just simply say, okay, instead of it doing under 41a1, I'm doing it — I'm construing it this way. And again, the courts construe amendments to pleadings all the time. In the case I cited in my note about the Katrina Canal breaches case — But didn't the court deny an amendment? In which case? They didn't in this — the court didn't in this case? Okay. Well, no, not the amendment requesting a dismissal. No, I'm saying that didn't you all — you did request an amendment and the court said it was untimely. Well, that was a request. Am I not right on that? Well, that was a request to add additional — Okay, you're just saying it's a different amendment, but I wasn't wrong in asking about that. No, the court — that's correct. The court did. It did, didn't it? We requested — But you think the court would have allowed an amendment to say, I'm not adding, I'm subtracting? Yes, I think you would, because when we're saying that, look, we just — we do not want to pursue these, had we gone, for example, and said, let's have a final pretrial, we'll have a final pretrial order. In the final pretrial order, we drop the claims. We haven't amended our pleadings, but under the Katrina Canal breaches case, this Court says that a pretrial order supersedes the pleadings. So I believe that. And again, if you're looking at saying the court would not necessarily grant it, we have the other aspect of — excuse me — of A2, and that is that all the parties have stipulated to it. And so we have the right to amend, to drop it, because we've got the consent of all the parties. So we've kind of got belt and suspenders on this. In any event, I think that the court can go — it does not have to send it back to the district court. If we have to, we have to. Now, as to the second jurisdictional issue that was raised in the court's letter about whether if a plaintiff, you know, enunciates dismissal, even of part of a case, that automatically suicides the entire case, that I don't believe is supported by this court's precedent. Exxon and in Williams, they came back and said, no, if you've done it improperly, it's simply invalid. The claims are still alive. That's what the Eleventh Circuit has done in the cases that I've cited to you. They've said, you can't do it this way. The claims are still alive. You have to go down — So you're saying we can't throw the case out. We either decide it or we send it back to the district court. That is your position? That is my position, Your Honor. And again, the other case that I've cited to the court, too, is the Supreme Court case of U.S. v. Procter & Gamble. It's an older case, but it directly addresses the issue, the idea that in that case, the district court ruled against the government. The government said it didn't want to comply with the court's ruling, and so therefore just to dismiss the case so that it could take up an appeal. When it got up to the Supreme Court, Procter & Gamble argued, hey, the government dismissed it under the common law rule. We can't — you can't hear it. It suicided the entire case. The Supreme Court said no. They were making it very clear they were doing this to facilitate an appeal to this court. And the order in this case, you know, nothing herein shall preclude KFA from appealing the dismissal of the previous dismissed claims or any previous ruling of the court. It was very clear that that's what we were doing. Again, if we're wrong on the 41A issue, I think both Exxon and Williams say that we — the claims are still alive, and therefore we have to go back and fix it. Okay. As to the merits on the 120A issue, I'm going to have to obviously truncate. Remember that this is a 12B6 dismissal. And frankly, what the — what the district court did, they did not take our pleadings as written. The court made a lot of assumptions. It made a lot of conclusions that are not there. Remember that the images in question were created not by looking at a building. They were created from Kip Flores' computer files prior to construction. So when these images were created, there is no way that 120A applied. When they were first distributed, there's no way 120A applied. And even the district court recognized that in denying AHV's motion for summary judgment, saying some of this was obviously pre-construction, 120A doesn't help you. Where the court erred in dismissing our claims against AMH Creekside is because what the court said was, well, Kip Flores' pleadings say that they only used them after April 2nd, 2019. That's not what the pleading says. And if you look at — it's in record on appeal at 191. What Kip Flores pleaded was that by no later than April 2nd, 2019, AMH Creekside knew the terms of the contract. Now, that goes to our Sienner point on DMCA 1202. But it's not a temporal limitation on our claims. Because when you say by no later than, that implies that it could have also been before. It's saying no later than. But the district court just simply took that the wrong way. That by itself justifies reversal. Because at the very least, even if the district court's right on 120A, we still have claims. Now, was he right on 120A? I don't believe so. The main one I would ask the court to look at is the Design Works opinion out of the Eighth Circuit. It is a masterful piece of scholarship. I can't improve on it. All I can say is whether you look at it from a textualist standpoint, whether you use the demands of statutory construction that the Supreme Court has said that they have to do, it's discussed masterfully in the Design Works opinion. The district court never even engaged any of those. He just simply said, I don't agree with it. I'm not bound by it. I'm following it. I don't believe the score. And it's your position that if we went the other way, we would be creating a circuit split. Absolutely. There's not already a circuit split. There is not already a circuit split. That is your position? That is my position. There is not, to my knowledge, there is no Fifth Circuit law on 120A on this, or certainly not 120A applying this. So if you go the other way, you do create a circuit split. And frankly, I don't think any other circuit has gone the other way on it either. Additionally, the district court, we pointed out that we had pleaded for one of the works in question. We do have a PGS Works copyright because when you create an architectural work, you get two copyrights. One in the architectural work, one in the PGS, the pictorial, graphical, sculptural work that you have fixed it in. We pled that on one of them. We subsequently got registration on the other two. That's what we tried to add, and the district court said no. But we still have that one in there. I raised this with the district court, and what his response to it was, well, I'm just going to apply 120A to PGS Works. It does not work. The statute says it's for architectural works. You've got at least three of the circuits, the second, the eleventh, and the federal say specifically it doesn't apply. The district court cases we've cited, I would especially ask the court to look at the Tiffany case. It explains exactly the situation, why you can't do it. But there's another reason here. If this court extends 128A to PGS Works, you are going to instantly destroy the portfolios of lots of artists. For example, if you are an architectural photographer and you make your living taking pictures of houses or buildings and licensing them to people, under the district court's ruling, 120A says, because it is a pictorial representation of a constructed building, it's free for the taking. I think that is an absurd result. It's certainly not justified by the statute, the legislative history, or the case law. Okay. If you were writing the opinion, how would you write about floor plans? I would say the Eighth Circuit got it right. I would say the Eighth Circuit, that floor plans are not covered by 120A. I would then also say, to say that 120A applies to PGS Works in any way, shape, manner, or form is wrong, because the statute says it doesn't. Okay. On the DMCA 1202 issue, again, there is a split in the case law on this. This court has not ruled on it in the Loeb case. The court recognized the split and said it wasn't going to rule on it in that case. The ADR international case is a good one to explain all this. If the court wants to get into that, it can, but it doesn't have to in this case, and that's because the parties stipulated to what the law would be in their contractual relationship. And, again, if you look at the contract, it's at record on appeal at 225-226. It's there. It's in bold. This wasn't fine print. This wasn't any sort of laying behind the law. There seems to be a fight about contracting, which is kind of interesting to me. As I understand from you, you think contracting is very broad. Now, of course, you can't contract for something illegal. You cannot contract against the law, but you can set up otherwise pretty much anything you want. Well, what you can, for example, you can say choice of law will be Texas, choice of law will be California, then you will be in the Western District of Texas. But here what you're saying Right, but you can't enter into a contract to sell heroin. Of course not. But there's nothing illegal here. The point is there are some things you can't do, but I think your position is setting those outside. Of course. Even if the law doesn't cover something or doesn't address something or whatever, you all can write a contract that sort of creates your law. Is that what you're saying? No. What I'm saying is where the law is unsettled, and here it is, there are two lines of cases. Where they're unsettled, the parties can say we're going to agree that this one applies, and that's what happened here. If you get into the actual split on this, I have very little time, so I'll just say it this way. Look at the definition of copy in the Copyright Act, because none of the cases that have discussed this original copy or non-literal copy exception to DMCA 1202, none of them looked at the definition of copy in the Copyright Act. When you apply the statutory definition of copy, those cases fall away, because the definition does not include, it does not limit it to original copies or literal copies or whatever else. Again, I'm out of time, just about out of time. The remainder of the points on especially the 1202 issue are covered extensively in our brief, and I would— Well, and you've saved time for rebuttal. Yes. Okay. So next, we'll hear from James Ruiz for the American Housing Ventures. Good morning, Your Honors. James Ruiz for the Appley with the Ellen Eisenhower American Housing Ventures LLC. And we are basically here on just two claims, not the direct infringement claim, because that was the one that was voluntarily dismissed against American Housing Ventures. So that's not the subject of your review today. We're here on the DMCA claim and on the contributory infringement claim. And to—basically, the whole premise of the plaintiff's claim is that American Housing Ventures and American Homes for Rent had published copies of architectural works that did not have the required CMI on it. And these are architectural works that were created by third parties, not by Kip Flores. And it's important to remember that every party in this case had a license agreement that covered the activities here. And the allegation that the plaintiff is making, the whole premise of their case is that by distributing, publishing the AGS graphics drawings and the Bluent renderings without the CMI on it, that violated the license agreements and basically voided them and then were subject to copyright infringement. That's really the essence of their complaint. And they misread the agreement to put a burden on American Housing Ventures to have put the CMI on for them. And the contract doesn't say that at all. In fact, the license agreement in Article V makes very clear that it is Kip Flores, the architect, who shall cause the copyright information to be put on their architectural works. And it even says later that they will affix it on any work that they are claiming ownership to. And in this case, an important fact is that when AGS graphics and Bluent were going to prepare these marketing materials, they actually entered into, each entered into a separate license agreement with Kip Flores, which American Housing Ventures was not privy to at all. Didn't know what the terms are, did not see it until this lawsuit was filed and was produced in discovery. And so therefore, American Housing Ventures had no knowledge of what the terms were, who had claim of ownership on it, and it's undisputed in this case, and this is why the 1202A3 claims fail, it's undisputed that when they received, American Housing Ventures received the drawings and the renderings from the vendors, they contained no CMI information on it. And the very essence of the DMCA claims are that someone removes or alters the CMI information on the copyrighted work, and in this case, that did not occur, because it's undisputed that the works never had it on them. And therefore, the claims fail as a matter of law, and I believe that the court properly dismissed it on that ground. And with... What is your view on the jurisdiction issue? On the jurisdiction issue, we did agree to allow them to dismiss the remaining claims, and of course, that benefited my client the most, because it dismissed the direct infringement claims. And I think my view is under 28 U.S.C.A. 1291, it says that all final judgments are subject to appeal. And in essence, when the court entered its final judgment, it said take nothing on all claims, and so there is nothing left to adjudicate. If it goes back to the district court, there's nothing left to adjudicate. So it is a final judgment and should be subject to appeal. And I think the key there is because the dismissal was with prejudice, and I think that was one of the exceptions in some of the cases where the dismissals were under 41A. It's generally deemed without prejudice, less specifically made with prejudice. In this case, the dismissal was made with prejudice, so there's nothing left to adjudicate. There's no chance that it can come back in, you know, the piecemeal litigation, piecemeal appeal, because the claims are all, they're done. And so I think for that reason, this court does have jurisdiction to address the appeal. And getting to also on why the DMCA claim fails is because there's no allegations to meet the requisite double scienter requirement, and that being that American Housing Ventures knew that the CMI information had been removed and knew that by publishing it, it was going to somehow enhance or contribute to an infringement. And that gets back to the very fact that because American Housing Ventures had no knowledge of what the agreement was between KIPP Floors and HV, HES Graphics and Blue End, no knowledge who claimed ownership, and no knowledge even if KIPP Floors wanted to claim ownership just because something could possibly be a derivative work doesn't mean that the copyright owner would want to lay claim to it. If someone wants to get their work and alter it, the person may say, I don't even want my name associated with that. So there was nothing to ever indicate that KIPP Floors was even claiming any ownership rights in the HGS Graphics drawings or the Blue End renderings. And in fact, five years went by since those things were created, and not a single notice from KIPP Floors to advise American Housing Ventures that, hey, can someone put our CMI on that? I mean, we believe this is, you're violating the agreement. But you know, if you all were arguing a jury trial or even maybe a summary judgment, this would make a lot of sense. But this sounds very factual, what you're saying. And a 12b-6 is based on just what's in the complaint and something attached to it. I understand that. But basically, what's in the complaint, not what the real facts are. Yes, Your Honor. And I think the issue is in the complaint. Those allegations were lacking. There was no allegation that AHV knew that the CMI had been removed. There was no allegation that AHV knew that KIPP Floors was claiming ownership rights in the works that it received from Blue End and HGS Graphics. And the reason for that, Your Honor, is because, once again, the license agreement always speaks to what KIPP Floors provides to American Housing Ventures directly. And the HGS Graphics drawings and the Blue End renderings were not provided to AHV from KIPP Floors. They were provided by the actual vendors. So you know, we would argue that it's not even covered in the license agreement, that we would have, even if you could argue that you read it to say we had some obligation to put the CMI, any obligation under the license agreement was anything we received from KIPP Floors. We did not receive those from KIPP Floors. And so, and those are in the allegations. They have to have sufficient allegations. There's no allegations that we knew that the CMI should have been on it and was removed. There's no allegation that we knew that it would have induced infringement. So those allegations are completely missing. And when we get to the contributory infringement, aside from the fact that that fails when the direct infringement claim against American Homes for Rent fails, they just use the basic parroting of the statutory language. It's all conclusory allegations. And therefore, that's insufficient to survive a 12B6. And so, you're right, Your Honor, the standard for a 12B6 is much lower, but these are just the complaint, the first amendment complaint does not contain the sufficient allegations to support the claim. And so, we believe the district court was correct in dismissing it for that reason. And then, finally, with respect to the contributory infringement claim, to get back to the court, I think the court properly dismissed the copyright infringement claim against American Homes for Rent just based on the very fact that the renderings were done on the houses and the argument that they predated it. It's important that, and it's in the allegations, the original license agreement between American Housing Ventures LLC and KIPP Floors was in 2016, and it was in connection with the River's Edge and Legacy projects that were in Pflugerville, Texas, and Georgetown, Texas. And those renderings were actually done from the houses made there, and the houses made there were the identical houses that were going to be made in New Bronzeville, which is also encompassed by the license agreement in the market area. So, basically, the drawings, the houses, they were already built, they're built of rent. I mean, it's like when you go to one of the subdivisions, and every six houses looks like the house six houses away from it. There was just basically, in this case, three floor plans that were just built repeatedly throughout the subdivision. And so the claim on the timing, we believe that that's really not an issue because there were houses already built that used the exact same floor plans as some that were built subsequent. And the timing issue, really, with respect to the district court, really came to American Housing Ventures because American Housing Ventures was also working on another project in San Antonio that was outside of the license agreement, which was a separate lawsuit in volving American Housing Ventures, which has already been resolved. And so that was the gap, and that's why the summary judgment was denied with respect to American Housing Ventures on the direct infringement claim because the argument was that they were using the same marketing materials for a project outside of the license agreement. And that's the distinction between us and American Homes for Rent. And I know my time's up. Thank you. Thank you.  We'll turn now to Adam Unikowski, I hope I get it right, who represents AMH Creekside Development. Thank you, Your Honors. May it please the Court. Adam Unikowski on behalf of the Creekside Appellees. The district court correctly dismissed Kip Flores' claim for direct copyright infringement as well as Kip Flores' claim under the DMCA. The judgment below should therefore be affirmed. I'm happy to begin with the jurisdictional issue that the Court raised before oral argument. I do think there's a genuinely final judgment here. All claims were dismissed with prejudice. The case therefore differs from cases like Ryan where a claim was dismissed without prejudice, so it was essentially an interlocutory appeal. To answer the panel's questions, the first question was about the propriety of the district court's order under Rule 41A2. I have two points about that. One is I think the order was legal, and second, even if it was illegal, I don't think it would withdraw this Court's appellate jurisdiction. So on the first point of the legality of the order, I would say two things. First of all, this Court has definitely said that Rule 41A2 can't be used to dismiss individual claims. That's clear from this Court's binding precedent. In terms of defending the legality of the order, I have two theories I'd offer to the  One is that if you kind of construe this order generously, maybe bend over backwards, you know, to the district court, you can construe the motion as requesting dismissal of the whole action. It's true that it says that some claims were already dismissed, and so it's only asking to dismiss the extant claims, but the actual relief requested by the plaintiff was a single final judgment dismissing all claims with prejudice. So arguably that's a form of a request to dismiss the entire action, which would be legal under 41A2. Or the other theory potentially justifying the order is that arguably it was under the inherent authority of the Court. Like, Rule 41A2 is permissive. It says a plaintiff may seek dismissal of the action. It doesn't actually say you can't dismiss an individual claim. It's just completely silent on that issue. Counsel, can I ask you about your first theory, which is that, you know, because I'm sympathetic to this one, which is, well, if you read this motion, it sure looks like it's a motion for a dismissal of an action. So that would fix the 41 problem. But doesn't it create a second problem, which is that 41A dismissals of the entire action aren't appealable because the plaintiff, it's an adversity problem, right? It's like, if the plaintiff comes in and says, I'm done, please dismiss the action, the whole action. Well, usually we've said that's not appealable. The only exceptions are times where there's some thing attached to the dismissal such that it would, you know, have some condition or some future effect or something that, you know, makes it appealable somehow. And I'm just not sure I understand how it would, it's like it fixes one problem but then creates a second one. Yeah, I'm sensitive to that point, and it's true. So this Court's cases do say it's presumptively non-appealable, although as you say, the rebuttal to the presumption is when there's something attached to it, and that's completely different from the facts of this case. But you know, I think just looking at what happened, there just is adversity in the sense that the district court's order actually does say that the plaintiff is still challenging the dismissal of certain claims. So you know, I think the ordinary presumption that the plaintiff got what he wanted is probably rebutted on the specific record of this case when both the plaintiff is saying and the district court is saying that the plaintiff still opposes the dismissal of certain claims. That's my best answer to the question. It's just different from the cases in the past in which the plaintiff really did want all of his claims to be dismissed. I want to be sensitive to your time, and I hope you'll have as much time as you need to make your other points. But I'm curious about this question. If we disagree on this jurisdiction thing and think, actually, this is a problem, and we dismiss this appeal, what is your view of what would happen in the district court? Would it be Rule 60, kind of like relief from judgment kind of thing? Or what would be the deal? I think it would depend on exactly how the court wrote its order. One way the court could write the order is to say that, like, the Rule 41, or the motion, it doesn't actually cite Rule 41, but anyway, the motion never happened at all. It's as if it didn't exist and it just sort of moved to the state of the world before that motion was filed. If the court writes the order, its decision that way, then no, it wouldn't be Rule 60. There just wouldn't be a final judgment at all. I think that's actually wrong. The motion happened. You can't rewind the past. I mean, there's a difference between an incorrect judgment and a non-judgment. District courts make mistakes all the time. It doesn't mean it's not a final judgment. That's why this court exists. So I do think that there is a final judgment that doesn't not exist. So I think it would have to be some kind of Rule 60 motion which would be litigated if the court were to say that there was a mistake made. I just want to add one more point and then I'll move to the merits. Arguably the court's inherent authority permitted this. Like, Rule 41b permits the defendant to move to dismiss individual claims for lack of prosecution. There's also some Supreme Court authority. There's a case called Link v. Wabash that says that that's not exclusive. Like the district court can sua sponte, dismiss for lack of prosecution, so under its inherent authority. So arguably there's an inherent authority that Rule 41 doesn't withdraw, that if a plaintiff says, hey, I'm not interested in prosecuting these claims, the court can say, fine, they go away. I don't read 41a as necessarily withdrawing that authority, even if it doesn't actually confer it. Okay. Unless there's any other questions about jurisdiction, I have only a couple of minutes to address the merits. So if I can move on to that. So we agree with the district court's disposition of all the claims in this case. What's your best argument on a 12b-6? I mean, because again, so the briefs are very factual, and I appreciate that, but we're at a 12b-6, so please give me your best 12b-6 argument. Sure. So I'll begin with direct copyright infringement and then turn to the DMCA. So on direct copyright infringement, I think the question of whether floor plans qualify as pictorial representations is a question of law. Like the floor plans are in the complaint. The court can just look at them, and the court can look at the statute that refers to pictorial representations and just determine whether or not as a matter of law it qualifies. So I don't think that additional factual development is necessary to answer that question. I don't understand y'all's argument on the floor plans. That's just very different from if you just took a picture of the outside of this building, that's really different from a floor plan of what the building, how it was set up, isn't it? Well, it's different, but it's still a pictorial representation, Your Honor. I think a pictorial representation is just an image that represents something. Okay, but if I drove by your house, I'm assuming you're on a road that I can drive on, and I took a picture, would that tell me how many bedrooms you have, how many bathrooms, whether you have a nice kitchen or something, how it's set up? No. The floor plan would tell me that information and where everything is, but just driving by and taking a picture of your house would not. I agree with you. I can't just wander in your house and look up your floor plan on my own, because I'm assuming that that's your personal house and you don't just let everybody in. I agree, Your Honor, but I think the statute also exempts interior photographs and interior pictures. So if I go inside my own house and take pictures of every single room and put them on the Internet, I don't think that's, I think that falls within the safe harbor, they're photographs, even though they're interior photographs. I think the question in this case boils down to whether an interior floor plan should be treated differently from interior photographs for purposes of— No, because, I mean, the thing is not necessarily, I understand if it's a totally public place, maybe that's a little different, but if it's an apartment, for example, I might be in an apartment complex, but I don't know what your apartment necessarily looks like. I just know mine. And so the notion that anybody can, that it's just become something you can put online, I don't understand that. I mean, that's not the same thing as being able to drive by a house and take a picture of your house. So having been able to put that online, well then, that's not an issue anymore. So I think the exception is a little broader than that. The exception does apply. So let me just, I have the statute here, I can just read it to the court and explain how we're interpreting it. So the statute does apply only when the building is located in or ordinarily visible from a public place. So that's what triggers the exception. But it's true that in this case, I think it's undisputed that as of 2018, the buildings were publicly visible. So given that that threshold requirement is met, the question is what types of distributions are exempted? And the answer is pictures, paintings, photographs, or other pictorial representations of the work. So I think that encompasses, for example, all photographs, both exterior and interior. In other words, once you can see the building from the outside, then I think all photographs, whether interior or exterior, are exempt. Why though? Because to me, that's just really different. Like I said, driving by your house and taking a picture is really different from trespassing into your house and taking internal... I don't think anyone's trespassing. I mean, the statute doesn't make any... First of all, by its terms, the statute doesn't distinguish between interior and exterior photographs. And second, I think most people would be surprised if they took pictures of their own house, they were infringing a copyright of an architect. Like in my house, I take pictures of bedrooms all the time for purposes of home improvement projects. I think most people would be surprised to think that they'd be infringing a copyright if they do that. And I think the statute is designed so that any photo, whether inside the house or outside of the house, a homeowner can just take the photo once their house is built without worrying about having to get a license from some architect, they don't even know who they are. I would... I mean, I understand the Court might be reluctant to create a circuit conflict on this issue, although we strongly disagree with the Eighth Circuit's reasoning. That's why in our brief, we've offered an alternative ground to affirm the district court, which is this issue of a license. And we construe the license as saying that, you know, we can't remove Kip Flores' copyright management information. But again, even sensitive to the 12b6 posture, Kip Flores has not alleged that we did that. Kip Flores has alleged that we, Creekside, received images from third parties, which to our knowledge were perfectly kosher and just failed to add information saying that Kip Flores had designed these works in 2002. And I don't think the license required us to affirmatively add anything. And again, in terms of the 12b6 stage, I mean, the interpretation of the contract is a question of law. The contract is attached to the complaint, so I think that's an alternative rationale to affirm on the copyright infringement claim. And on the DMCA, similarly... I'm sorry. Did you have a question, Your Honor? Sorry. No, go ahead. Oh, I'm sorry. On the DMCA, similarly, I think the district court was simply construing the allegations in the complaint for all their worth. There just isn't an allegation of removal. If you read the complaint, as the district court correctly concluded, essentially, the plaintiff, Kip Flores, just sent these images, sent these computer-assisted design files to these third parties, and then the third parties created these completely different looking images, these floor plans and these building renderings and sent them back. They failed to include the CMI, but that's just not enough to allege removal. Removal is stuff like when you have a piece of software and you strip out some code or you have a photograph and you crop it. That's what remove means. And the district court correctly concluded that such allegations don't appear in the complaint. So I think the district court was reasonably reading the complaint. Thank you, Your Honors. We'll now hear from Mr. Bonham on rebuttal. Thank you, Your Honor. What's your response to what he just said on the floor plan, that since once it's built, you can anybody, you know, you can take a picture of the inside, so that's the floor plan. You can certainly, again, if it is a photograph of it, it can be. That's, 128 does say that. However, as the, at the 8th Circuit went through in great detail in design works, floor plans are different. They are not pictorial representation and especially not where, in this case, they were not created from looking at the house. They were created by taking our CAD files or a PDF of our CAD files and using them. They were not done from. I mean, he's essentially saying you can tell what the floor plan is when you take the picture inside. I'm just questioning. I don't think, I don't think you can because for example, let's say for example, if a floor plan is going to show, for example, where air chases are, you know, voids in the walls, things like that, unless you're an expert, I'm sure an architect or a contractor could look at those and perhaps figure it out, but the average person couldn't. With respect to Mr., my colleague's claim that Kip Flores didn't do this, I think Judge Haynes, you touch it with a needle. This is a 12B6 motion. These are issues they ought to be raising, but here is what, and it's in our brief, it's on record on PEO at 200, AHV knew such distributions were copies of KFA's architectural works that had had Kip Flores or KFA's copyright management information removed or altered. That's what we pled. Right. So that could be totally false, I'm not saying you would do that, but it could be totally false, but it's still pled, so your argument is 12B6 goes out the door, and you better do the MSA. It's 12B6. It has to be taken as true. And similarly, for example, they raise the issue that, what does the contract say? Again, I would urge the Court to read the contract, particularly Section 5A, because it contradicts what Mr. Ruiz has said. For example, after saying, you know, any publication of architect's copyrighted works by client must display the copyright symbol with the architect's company name in your first publication. This expressly includes, but is not limited to, any display of the plan or the architectural work depicted therein in brochures, pamphlets, or in any published media, such as newspaper or magazine advertisements, and that may be posted electronically on the Internet slash web. So the fact that they had someone take our CAD files, what do you do with a CAD file? You take it, you load it. The rendering people then, as I explained to the District Court, I've cited where it's in the record in my brief, what they then would do, when you're doing a rendering, you take the CAD file, you load it in, you start removing stuff that you don't need, like the copyright notice, and then you add other things in and you generate the rendering from the CAD file. That's what happened here. They made a copy of our architectural work, the design of the building, they removed our copyright notice, and as the contract said, we pled, it's all pled, and the contract addresses it and says that will be unauthorized in a violation of the Digital Millennium Copyright Act. I don't know how clear we could have made it at any event. On, with respect to the privacy issue the Court raises, I believe this is addressed, or at least relied on in the amicus brief that was filed on behalf, applying 1202 and saying that floor plans are fair game and can be put out anywhere and you can't, copyright holder can't do anything about it, that raises some pretty severe policy implications because that just means that it goes out the window. But again, that's more of a policy issue rather than a legal thing. I think if you simply look at the law on 120, especially the Design Works case, that's as far as you need to go. All right. If there are other questions for the Court, I'm happy to answer them, otherwise I'll tend to the remainder of my time back. Okay. Thank you. This case is now adjourned.